824 A.2d 1051

Dushan ZDRAVKOVICH

v.

Milton SIEGERT, et al.

No. 01649, Sept. Term, 2002.

Court of Special Appeals of Maryland.

May 30, 2003.

Carlton Green (Green, Leitch & Steelman, on brief), College Park, for appellant.

Frank Bradley, Annapolis, for appellees.

Argued before EYLER, JAMES R., GREENE, BLOOM, THEODORE G. (Retired, Specially Assigned), JJ.

GREENE, J.

Dushan Zdravkovich appeals from decisions by the Circuit Court for Anne Arundel County (1) denying his request for a postponement, (2) denying his motion for reconsideration of the denial of his request for a postponement, and (3) denying his request for a default judgment against appellees.[1] In addition, appellant objects to the circuit court's dismissal of his complaint with prejudice. Appellant presents three questions for our review, which we have rephrased:

I. Did the court abuse its discretion by denying appellant's request for a postponement and his motion to reconsider the court's decision on that question?

II. When one appellee appeared for trial and appellant and all other appellees were absent, did the court err by dismissing appellant's case against all appellees, with prejudice?

---

1. Appellees are Milton Edward Siegert, Jr., Frank Bradley, Deborah Marie Siegert, Richard Dale Siegert, Mark Alan Siegert, and Patricia A. Siegert.

III. Did the court abuse its discretion by refusing to grant appellant's requests for orders of default against appellees?

We answer all three questions in the negative. We shall affirm the judgment of the trial court.

## FACTS AND PROCEEDINGS

On June 6, 2001, appellant, who is an attorney,[2] filed a complaint for breach of contract against appellee Milton Siegert, a former client, for unpaid attorney's fees. The complaint also included a count for declaratory judgment against appellee Frank Bradley, regarding payment of rent from Bradley to Siegert. On September 6, 2001, appellant filed an amended complaint, adding four more defendants[3] (all former clients) and adding the additional counts of malicious prosecution, intentional infliction of emotional distress, fraud, and theft/conversion.[4] On October 9, 2001, a joint answer was filed by attorney Edward Hartman, III, on behalf of all the Siegerts. Hartman filed a separate answer on behalf of appellee Bradley on that same day.

On November 21, 2001, the court held a scheduling conference and set a pre-trial date for February 21, 2002. On December 3, 2001, Hartman filed a consent motion to withdraw as counsel for appellee Bradley. The court granted that request on December 21, 2001. On January 8, 2002, Hartman filed a motion to withdraw his appearance on behalf of the remaining appellees. The court granted that request on February 14, 2002.

---

2. Zdravkovich was indefinitely suspended from the practice of law on January 3, 2001.

3. The additional defendants were Deborah Marie Siegert, Richard Dale Siegert, Mark Alan Siegert, and Patricia A. Siegert.

4. The theft/conversion count alleged that appellee Deborah Siegert was employed by appellant as a legal secretary and that she inflated her paychecks, made unauthorized phone calls, and removed property from appellant's office, among other things.

On January 31, 2002, appellant filed a second amended complaint, which included a number of "new" counts. In fact, the new counts, though labeled differently, alleged the same basic facts as the first two complaints.[5] Appellant served the amended complaint on appellee Bradley and on Hartman, as attorney for the other appellees. None of the appellees filed additional answers.

It appears from a review of the court case profile that the pretrial scheduled for February 21, 2002, was cancelled. Nonetheless, a pretrial order was signed on February 21, 2002, scheduling a ten day jury trial for August 20, 2002. The pre-trial order was signed by four of the appellees and Judge Chasanow. The order included the following statement regarding postponements:

> This is a firm trial date. No continuances will be granted except as justice requires in accordance with Md. Rule 2–508. Counsel are reminded that pursuant to the Civil DCM plan adopted by this court, continuances by consent are not granted unless consistent with the plan provision. Any motion for continuance must be filed in accordance with Md. Rule 2–311 and Md. Rule 2–508. Last minute continuances will not be granted absent extraordinary circumstances.

The pretrial order itself does not reflect that copies were mailed to all parties. The court case profile, however, notes, "pre trial order signed by Judge Chasanow (copies to Milton Siegert, Dushan Zdravkovich, Deborah Siegert, Richard Siegert, Mark Siegert, Patricia Siegert)." Moreover, at oral argument, counsel for appellant conceded that there was no dispute that appellant had actual notice six months in advance of the trial date scheduled for August 20, 2002.

---

**5.** The alleged facts include appellant's assertions that he did legal work for appellees and they failed to pay him what they had previously agreed to pay. In addition, appellant repeated his claims that money that had been paid by appellees to appellant was for attorney's fees and was not rent money that had been received by the Seigerts from appellee Bradley, to be placed in escrow.

On March 17, 2002, appellant filed requests for Orders of Default against all appellees, on the ground that they had failed to answer the second amended complaint. The court denied those requests on April 11, 2002, for failure to comply with Md. Rule 2–613.

On March 21, 2002, the court issued an "Order for Pretrial Conference," scheduling a pretrial for April 29, 2002. The order notes that copies were mailed to all parties. The court case profile notes that the April 29, 2002, pretrial was also cancelled. On April 22, 2002, appellant filed additional requests for orders of default against all appellees. On May 13, 2002, the court denied those requests, noting that appellant failed to provide the court with proof of service.

On May 17, 2002, appellant filed a change of address with the clerk. On August 6, 2002, the Assignment Office mailed notices of jury trial to appellees and to appellant at his old address. The notice reminded the parties that the case was set for trial on August 20, 2002. Appellant asserts that he did not receive that notice until August 12, 2002.

On August 15, 2002, appellant filed his first motion for continuance, asking the court to continue the case "pending request for entry of Order of Default[6] and illness of plaintiff." In support of his motion, he asserted that the second amended complaint was served on all appellees on February 5, 2002, and that none had answered. He also stated, "Plaintiff is ill and under doctor's care at present. Plaintiff is entitled to Order of Default as a matter of law." The motion was not accompanied by any affidavits. In addition, on August 15, 2002, appellant filed his third round of requests for orders of default against appellees. On August 19, 2002, the court denied appellant's motion for continuance.

---

**6.** As of August 15, there was no *pending* request for orders of default. Appellant's second round of requests for default orders had already been denied as of May 13, 2002. No further request for orders of default was before the court until August 15, when appellant filed his third round of requests for orders of default.

On August 20, 2002, the day that the jury trial was scheduled to begin, appellant filed a motion for reconsideration of the court's order denying his request for a postponement. Appellant attached a letter dated August 16, 2002, from his doctor, Thomas Goldman, in which Dr. Goldman said that he had previously treated appellant for depression and anxiety in connection with a number of "stressful life events" including "participation in ongoing legal battles. . . ." Dr. Goldman also noted that appellant had been doing well until two weeks before the scheduled trial, "when the specter of his ongoing legal battles again became a concrete reality in the form of a trial date in Annapolis in the very near future." Dr. Goldman advised appellant to resume medication and avoid stressful events in his life, including the upcoming trial:

> In that regard, in my professional opinion it would be virtually impossible for [appellant] to effectively represent himself in court in his present condition. . . . I have recommended that he have his legal case continued for at least one month in order to let his condition improve, with treatment, to the point where he could hope to participate effectively on his own behalf.

Dr. Goldman's letter was not accompanied by an affidavit.

Appellant did not appear for the hearing on the motion to reconsider, held before Judge Silkworth at 10:20 a.m. on August 20, 2002. None of the appellees, except Bradley, appeared for the hearing. Bradley opposed the motion to reconsider the denial of the postponement. The court denied appellant's motion for reconsideration, and made the following remarks:

> Well, I received a request for continuance that was filed by [appellant] . . . no affidavit, but he attached a letter from a Dr. Goldman that suggested . . . that . . . [appellant] is being treated by Dr. Goldman for depression . . . and anxiety. And apparently [appellant] has resumed that treatment, and is taking some medication, and well, according to Dr. Goldman's opinion, he has recommended that this case be continued for at least a month. . . .

I have reviewed that report, and while I certainly understand and am sympathetic to, whether it be counsel—or having tried cases for a number of years, I certainly understand that there are certain pressures associated with being involved in—whether it be as a lawyer, or as a litigant—litigation, that in and of itself is not sufficient reason to continue a case, especially when it has been through the process, as this one has been, and is required to be concluded—this was set in for a 10–day jury trial. We have one of the defendants here ... who is prepared to go forward in the case. It has been pre-trialed previously ... and I don't think the reason that is given is sufficient to justify cancelling. We have brought in, apparently, jurors to accommodate a 10–day jury trial.... And I don't think the reason proffered, and the report, it is not under affidavit, and even if I assumed the truth of it, I think it is—while it may be—I can understand being depressed ... and the stress of being involved in litigation, but if that were the standard to postpone cases, we would be postponing cases all the time.... I denied the postponement before, and I will deny the request for reconsideration.

At 10:40 a.m., Judge Caroom called the case on the merits and noted that only Bradley was present and that the clerk had checked the hallway a number of times to be sure that appellant and the other appellees were not present. The court found appellant in default for his failure to appear. In addition, the court granted Bradley's request that the case against him be dismissed with prejudice. Finally, the court, on its own motion, dismissed appellant's case against all other appellees, because of appellant's failure to appear.

On August 30, 2002, the court denied appellant's third round of requests for orders of default, noting that the case had been dismissed on August 20, 2002. Appellant filed this appeal on September 13, 2002.[7]

---

7. The Notice of Appeal stated that appellant "appeals from the Order of the court, Judge Silkworth and Judge Caroom presiding on October 20, and Order of the court on October 26, 2002, Judge North presid-

## DISCUSSION

### *Postponement*

■ Md. Rule 2–508 states in pertinent part:

(a) Generally. On motion of any party or on its own initiative, the court may continue a trial or other proceeding as justice may require.

\* \* \*

(c) Absent witness. A motion for a continuance on the ground that a necessary witness is absent shall be supported by an affidavit. . . .

■ The decision to grant or deny a request for a continuance is within the sound discretion of the trial court. *Thanos v. Mitchell,* 220 Md. 389, 392, 152 A.2d 833 (1959); *Das v. Das,* 133 Md.App. 1, 31, 754 A.2d 441 (2000). The court's action in response to a request for a continuance will not be reviewed on appeal unless the court acts arbitrarily. *Thanos,* 220 Md. at 392, 152 A.2d 833.

There is no evidence in the record in the case at bar to suggest that the court acted arbitrarily in this instance. According to the court case profile, the pre-trial order signed on February 21, 2002, by Judge Chasanow setting the trial date for August 20, 2002, was mailed to all parties by March 21, 2002. That was at least one month prior to appellant's notice to the court that his address had changed, so we must presume appellant received the pre-trial order and had notice of the trial date months in advance of trial.[8]

The fact that appellant did not receive the *reminder* notice from the Assignment Office until a few days before trial does not change the analysis. The February 21, 2002, pre-trial order very clearly stated the court's policy regarding post-

---

ing. . . ." It is clear from the record, however, that appellant is appealing the orders of August 20, 2002, and August 30, 2002.

8. Appellant neither argues in his brief nor at oral argument that he did not receive a copy of the pre-trial order. In fact, he notes in his brief, "in its February 11, 2002 Pretrial Order, the court scheduled a 10 day jury trial for August 20, 2002."

ponements: "Last minute continuances will not be granted absent extraordinary circumstances." Moreover, appellant's motion for continuance (and the motion for reconsideration that followed the denial of that motion) were not accompanied by affidavits detailing the "extraordinary circumstances" necessary to obtain a postponement.[9] *See* Md. Rule 2–311(d)(noting that a motion that is based on facts not contained in the record shall be supported by an affidavit).[10]

In *Thanos*, the Court of Appeals ruled that the circuit court abused its discretion by denying a request for a continuance when presented with affidavits from two doctors stating that appellant was mentally ill and unable to be involved in trial. *Thanos*, 220 Md. at 392, 152 A.2d 833. The Court noted:

> The facts and opinions of the doctors, as expressed in their affidavits, left no doubt that it would be impossible for the plaintiff to be in court to present her case. It appeared that [appellant] would be available within a reasonable time (a different situation would be presented if her illness were permanent or the prognosis was for a lengthy disability).

The case at bar differs significantly from *Thanos*. First, appellant presented no affidavit or statement under oath from a doctor supporting his request. Second, even if the doctor's

---

**9.** We note that Dr. Goldman's letter dated August 16, 2002, stated that "sometime in the last two weeks" appellant's mental condition started to deteriorate because of the upcoming trial date. We question, then, why appellant waited until five days before the scheduled trial date to ask the court for a postponement.

**10.** *See also Scully v. Tauber*, 138 Md.App. 423, 431, 771 A.2d 550 (2001), *cert. denied* 365 Md. 268, 778 A.2d 383 (2001)(noting that the motions court had no right to consider any "fact" set forth by appellee in his opposition to appellant's motion to set aside a default judgment, because appellee failed to attach an affidavit as required by Md. Rule 2–311(d), in support of the assertions contained in his opposition); *but see Tavakoli–Nouri v. Mitchell*, 104 Md.App. 704, 709, 657 A.2d 806 (1995)(noting that Rule 2–508(a) is not worded in such a way as to require that a request for continuance be made by motion. "Even if it did, Rule 1–201(a) provides that, where a rule mandates conduct but does not prescribe the consequences of noncompliance, the court may determine the consequence of noncompliance 'in light of the totality of the circumstances and the purpose of the rule.' ").

letter had been accompanied by an affidavit, nothing in the letter confirmed that appellant would be available for trial within a reasonable time. Third, Judge Silkworth did not base his decision denying the continuance upon the absence of the affidavit or the truth or accuracy of the doctor's assertions.

The letter informed the court that appellant had been suffering from depression and anxiety since at least January 2001, in connection with "participation in ongoing legal battles . . .," and that his condition deteriorated "when the specter of his ongoing legal battles again became a reality." The doctor recommended that the trial be postponed for "at least" a month so that appellant could improve to the point where he could "hope to participate effectively on his own behalf." Based on those statements, the court could have reasonably concluded that appellant's illness was likely to repeat the next time the "specter" of legal battles again became a reality, or, in the words of *Thanos*, that the illness was "permanent or the prognosis was for a lengthy disability," and that a continuance should not be granted. Under these circumstances, we cannot hold that the circuit court abused its discretion when it refused to postpone the trial.[11]

### Dismissal

■■ In light of the fact that we have held it was not improper for the court to refuse to postpone the trial, we

---

11. We think it expedient to point out that the court has the authority and obligation to move cases forward and to manage the court's docket. *See Naughton v. Bankier*, 114 Md.App. 641, 691 A.2d 712 (1997)(noting that the purpose of the scheduling order rule is to maximize judicial efficiency and minimize judicial inefficiency, and that it is "quite reasonable for Maryland courts to demand at least substantial compliance, or at the barest minimum, a good faith earnest effort toward compliance." The same could be said for compliance with pre-trial orders that set firm trial dates). As has been pointed out by *Niemeyer and Schuett* in the Maryland Rules Commentary:

Of all the devices, systems, and rules that have been considered for the successful management of a docket, the judicious use of this rule [2–508] is the most effective. Courts with a stingy continuance policy are better able to bring their dockets current. . . .

*Niemeyer and Schuett*, Maryland Rules Commentary at 394–95 (3rd Ed.2003).

cannot say the court abused its discretion by dismissing appellant's claims with prejudice when the case was called and he failed to appear to pursue his claims. Md. Rule 1–201(a) states in pertinent part:

These rules shall be construed to secure simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay. . . .

While the Maryland Rules contain no rule dealing specifically with the court's inherent power to dismiss a case *sua sponte*[12] when the plaintiff fails to appear on the day of trial, the Court of Appeals has acknowledged that a trial court may, without abusing its discretion, grant judgment in favor of a defendant when the plaintiff fails to appear for trial. *Zdravkovich v. Bell–Atlantic–Tricon Leasing Corp.*, 323 Md. 200, 208, 592 A.2d 498 (1991). In that case, Bell Atlantic sued appellant in the district court for breach of contract. *Id.* at 203, 592 A.2d 498. In turn, appellant sued American Communication Terminals, Inc. and its president for breach of contract and fraud. *Id.* Zdravkovich's motion to consolidate the cases for trial was granted. *Id.* Three days before the trial

---

12. Md. Rule 2–506 discusses voluntary dismissal of a claim by a plaintiff. Md. Rule 2–507 discusses dismissal for lack of jurisdiction or prosecution and is intended to eliminate inactive cases from the docket. *Niemeyer and Schuett*, Maryland Rules Commentary at 391 (3rd Ed.2003). The case at bar does not fit squarely into either of those two categories. It could be argued, however, that by failing to appear on the trial date, knowing that he was expected to appear, appellant, in effect, asked the court to dismiss his case. Pursuant to Md. Rule 2–506(a), a party is only permitted to dismiss an action without leave of court "by filing a notice of dismissal at any time before the adverse party files an answer or a motion for summary judgment," or "by filing a stipulation of dismissal signed by all parties who have appeared in the action." After that time has passed, as it had in this case, a plaintiff may dismiss an action "only by order of court and *upon such terms and conditions as the court deems proper.*" Md. Rule 2–506(b)(emphasis added). Under the circumstances in this case, the court did not abuse its discretion by dismissing the case with prejudice. *See Owens–Corning Fiberglas Corporation, et al v. Fibreboard Corporation*, 95 Md. App. 345, 620 A.2d 979 (1993)(noting that the court had the power to dismiss a counterclaim with prejudice, even though appellants had requested that their claim be dismissed without prejudice, because of Md. Rule 2–506(b)).

date, Zadravkovich's second request for postponement of the trial was denied. *Id.*

He appeared on the trial date for the docket call, but left the courtroom to represent a client in the circuit court, in a domestic relations case. *Zdravkovich,* 323 Md. at 203, 592 A.2d 498. He did not appear when the case was called for trial in the district court. *Id.* at 203–04, 592 A.2d 498. After prompting by the court, the defendants sued by Zdravkovich moved for judgment in that case, and the court granted their motion. *Id.* The Court of Appeals noted that it was proper for the trial court to enter judgment in favor of the defendants on the grounds that Zdravkovich failed to prove a prima facie case when he failed to appear. *Id.* at 208, 592 A.2d 498. The Court of Appeals concluded that the record of the proceedings in the District Court did not reveal that the trial judge abused his discretion by proceeding with trial in Zdravkovich's absence. *Id.* at 209, 592 A.2d 498.

In our view, by analogy, in the proper exercise of judicial discretion in a case in which the court could have granted judgment because of the plaintiff's failure to appear at trial and present a prima facie case, it could also, in the alternative, dismiss a plaintiff's case for failure to appear for trial. *See Goodman v. Commercial Credit Corp.,* 364 Md. 483, 491, 773 A.2d 526 (2001)(noting that, "... when there is no hard and fast rule governing the situation, in arriving at a decision, the trial judge must exercise his or her judicial discretion and the resulting decision is reviewed for the soundness and reasonableness with which the discretion was exercised. In making that evaluation, the reviewing court defers to the trial court. The necessity for doing so is inherent in the very nature of judicial discretion. 'Where the decision or order of the trial court is a matter of discretion it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.' ") (Internal citations omitted.)

Also, it is clear that the trial judge has the power to grant a dismissal, in light of its obligation to manage the court's

docket and prevent cases from remaining unresolved indefinitely. *See Tavakoli–Nouri v. Mitchell,* 104 Md.App. at 708, 657 A.2d 806 (1995)(noting that the Court of Appeals has recognized the need for greater court control over the course of litigation, and that "cases cannot be permitted to linger at the will of the litigants or their attorneys"); *see also Hossainkhail v. Gebrehiwot,* 143 Md.App. 716, 795 A.2d 816 (2002)(noting that there is inherent prejudice in delaying a trial and that the court has "inherent authority to manage its affairs and achieve an orderly and expeditious disposition of cases"). Furthermore, the court upheld the dismissal of appellant's complaint against a defendant who did not file a motion to dismiss because other defendants had filed a motion to dismiss based on repeated discovery violations and all defendants were "discovering" parties who were denied the benefit of discovery and entitled to the dismissal.

In *Tavakoli–Nouri,* the plaintiff/appellant failed to appear for a scheduling conference and the court dismissed his complaint with prejudice. 104 Md.App. at 708, 657 A.2d 806. We held that the court abused it's discretion in light of the circumstances in that case. *Id.* Appellant was hospitalized in Iran at the time of the conference and had not even known of the conference until three days before it was scheduled. *Id.* at 707, 657 A.2d 806. Appellant learned of the conference from his attorney, who had withdrawn his appearance from the case without his knowledge. *Id.* We stated:

> The record before us, and the information available to the circuit court, demonstrate beyond question that appellant was serious about pursuing his case. This is not a case that had lingered; it was only six months old when it was dismissed. Appellant had called the judge from a hospital bed in Iran to seek a 60–day postponement, not of trial, but of a settlement conference. . . . "

*Tavakoli–Nouri,* 104 Md.App. at 709, 657 A.2d 806.

The case at bar is readily distinguishable. Appellant failed to appear for the trial on the merits, which had been scheduled six months before the trial date. In addition, the case

had been on the court's docket for over a year at the time of trial. Moreover, appellant knew a day before the trial date that the court had denied his request for a postponement and that he was expected to appear for trial the next day. The consequences of his failure to do so should have been readily apparent to appellant.[13] As previously noted, the court has the authority and an obligation to control the course of litigation and to manage the court's docket.

*Default*

Md. Rule 2–613(b) states:

Order of Default. If the time for pleading has expired and a defendant has failed to plead as provided by these rules, the court, on written request of the plaintiff, shall enter an order of default. The request shall state the last known address of the defendant.

Md. Rule 2–341(a) states in pertinent part:

If an amendment introduces new facts or varies the case in a material respect, an adverse party who wishes to contest new facts or allegations shall file a new or additional answer to the amendment within the time remaining to answer the original pleading or within 15 days after service of the amendment, whichever is later. If no new or additional answer is filed within the time allowed, the answer previously filed shall be treated as the answer to the amendment.

Appellant argues that because none of the appellees filed additional answers to his second amended complaint, the court was required to grant his requests for orders of default.[14] We disagree.

---

**13.** When the court denied appellant's request for a continuance, he was faced with a dilemma. Even if he felt justified in following his doctor's advice, it was no solution to his problem to fail to appear for his trial. Appellant could have retained counsel to represent him, or at the very least, appellant could have appeared and renewed his request for a continuance. At that point the trial court could have inquired further of appellant on the record or in chambers concerning his physical and/or mental limitations before deciding whether to proceed with trial.

**14.** As previously noted, appellant filed three sets of requests for orders of default. The first request was denied on April 11, 2002, for failure to

Md. Rule 2–341 provides that if no additional answer is filed in response to an amended pleading, the original answer is treated as an answer to the amendment. Therefore, the requirement in Md. Rule 2–613(b) that the court shall enter an order of default if the defendant has failed to plead, does not apply in this situation. Appellees' original answers were in response to appellant's first two complaints. Moreover, the second amended complaint, although it included additional counts, alleged the same basic facts as the first two complaints. Under these circumstances, the court's refusal to grant the requests for orders of default cannot be said to be in error.

## CONCLUSION

For the reasons stated above, we hold that the circuit court did not abuse its discretion by denying appellant's request for a postponement or his motion to reconsider that decision. In addition, we hold that the court did not abuse its discretion by dismissing appellant's case with prejudice when he failed to appear for the trial on the merits. Finally, we hold that the court did not abuse its discretion by refusing to grant appellant's request for orders of default against appellees.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

---

comply with Rule 2–613. That request was merely a letter to the clerk referencing all defendants and failing to include any non-military affidavits. The second set of requests was denied on May 13, 2002, for failure to provide the court with proof of service. The last set of requests, filed on August 15, 2002, was denied by Judge North because the case had been dismissed by Judge Caroom on August 20, 2002. Assuming appellant cured his procedural problems by the third set of requests, it would have been absurd for the court to have granted a request for an order of default after the case had been dismissed. For the sake of clarity, we discuss the substantive basis of appellant's requests for orders of default above.